UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KAREN MCLEOD | ) | CASE NO. 5:10-CV-02702 |
| Plaintiff | ) ) | JUDGE ADAMS |
| v. | ) ) | |
| SELECT SPECIALTY HOSPITAL, NORTHEAST OHIO, INC., *et al.,* | ) ) ) | **ORDER AND DECISION** |
| Defendants | ) ) ) | |

This matter appears before the Court on Defendant Select Specialty Hospital, Northeast Ohio, Inc.'s Motion for Summary Judgment. For the following reasons, the Motion is GRANTED.

## I. FACTS AND PROCEDURAL HISTORY

The following facts are undisputed. The Plaintiff, Karen McLeod, is a respiratory therapist ("RT") who began working in November of 2008 for Defendant Select Specialty Hospital of Northeast Ohio Inc. ("Select") through a temporary staffing firm. At the end of Plaintiff's temporary assignment at Select in January of 2009, Defendant Susan Carbenia[1] and Glenda Coleman[2] were responsible for evaluating Plaintiff's candidacy for full-time employment. During this evaluation process, Carbenia was aware that a non-supervisory Select employee had told the Plaintiff that her hair looked like "Buckwheat", which was perceived as a racial remark. Plaintiff did not pursue an official incident report regarding this matter "because the nurse apologized." Doc. 37-1 at 118-119. Following the evaluation, Carbenia recommended that Plaintiff be hired for a full-time RT position. Plaintiff began full-time employment with

---

[1] Carbenia was the lead RT and Plaintiff's supervisor while at Select.
[2] Coleman was Select's Human Resources Coordinator during the relevant time period.

1

Select on January 26, 2009. As part of her position as an RT, Plaintiff was responsible for administering breathing treatments to patients.

At her 90-day performance evaluation, Plaintiff had minor issues noted by Carbenia, such as punctuality, poor interaction with co-workers, and failure to attend morning "huddles". Doc. 41. On May 25, 2009, a co-worker reported that the Plaintiff refused to give a patient breathing treatment. Doc. 40. Kathy McBride, Select's Director of Quality Management, investigated the issue. *Id.* 74-75. Select's personnel policy makes failure to render assistance to a patient a terminable offense. Doc. 37. Plaintiff conceded that she had knowledge that such a violation was a terminable offense.

McBride's investigation of the May 25, 2009 incident determined that Plaintiff failed to provide treatment to a patient, and McBride thereafter recommended Plaintiff's termination. Tyler Shovlin, Select's Regional Human Resources Manager, along with Jason Pirtz, the hospital's CEO at the time, reviewed and approved the recommendation. Doc. 39.

At her termination meeting with Shovlin, McBride, and Coleman, Plaintiff raised issues of alleged quality and performance issues of the second shift at Select and claimed Defendants discriminated against her because of her race. Docs. 37 and 40. Plaintiff told Coleman that she received different treatment because she is African-American and that she was being wrongfully terminated. Doc. 38. Plaintiff asserted that she observed that incident reports filed by African-American employees against Caucasian co-workers were not believed or taken seriously. In contrast, Plaintiff alleged, that when a Caucasian employee would write up an incident report asserting wrongdoing by an African-American co-worker, McBride would take steps to ensure that the alleged infractions resulting in sanctions. Doc. 37 at 106-107. Plaintiff asserts that she was fired because she was reporting the misconduct of her Caucasian co-workers. Shovlin

suspended Plaintiff with pay instead of terminating her while McBride investigated the allegations.

Plaintiff also complained about quality assurance and patient care. Plaintiff accused fellow RT Paul Hewit of sleeping in patient rooms during shifts. McBride caught Hewit in this act, and Hewit ultimately resigned in lieu of termination. Plaintiff also filed a complaint about fellow RT Janet Billie, accusing Billie of failing to administer breathing treatment to a patient. An investigation by Carbenia returned inconclusive results and therefore Billie was not terminated. Doc. 45-2 at 2. Plaintiff's other complaints were investigated, but many were not written up or ever reported.

In light of the findings and her statements, Plaintiff was afforded a second opportunity to maintain employment with Select. She returned to work on June 9, 2009. Two weeks later, on June 25, 2009, another patient complained that Plaintiff refused to provide him with a breathing treatment. Doc. 37-2 at 170. McBride investigated and the incident was confirmed. Doc. 40-1 at 34-35. Plaintiff was terminated for failure to render assistance to a patient, failure to follow physician orders, and failure to abide by clear expectations set upon her return from suspension. Within this litigation, Plaintiff alleges the incident never occurred and that she was the victim of racial discrimination.  In support of this assertion, Plaintiff relies on affidavit of Trina McNeal[3]. McNeal states that she was with the Plaintiff during the time of the alleged incident and that the patient in question never requested a breathing treatment. Doc. 54 at 2-3.

Plaintiff filed a charge with the Ohio Civil Rights Commission and the United States Equal Employment Opportunity Commission ("EEOC") on July 24, 2009, alleging claims of Discrimination, Retaliation, Intentional Infliction of Emotional Distress, the Creation of a Hostile

---

[3] McNeal was the unit secretary on Plaintiff's work floor at Select during the time of the incident at issue.

Work Environment, and Negligent Retention and Supervision. The EEOC found no probable cause, Plaintiff requested reconsideration, and the EEOC maintained its no probable cause determination.

On November 30, 2010, *pro se* plaintiff Karen L. McLeod filed this action against her Select, and five Select employees: Quality Control Manager Kathy McBride, former Lead Respiratory Supervisor Susan Carbenia, former Chief Executive Officer Jason Pirtz, Regional Corporate Human Resources Director Tyler Shovlin, and Regional Human Resources Director Mary Lacey. Plaintiff alleges she was retaliated against for filing an incident report against co-workers and discriminated against based on her race in violation of 42 U.S.C. § 2000(e)(3)(a), 42 U.S.C. §1983, 1981, 42 U.S.C. §2000e-5(g), O.R.C. § 4112.02(I), and O.R.C. § 4112.99.

On February 18, 2011, this Court dismissed Plaintiff's § 1983 claims and her personal capacity Title VII claims against McBride, Carbenia, Pirtz, Shovlin, and Lacey. Doc. 6.  In June, 2011, Plaintiff became represented by counsel and counsel moved to amend the complaint. Defendants did not oppose, and the Court granted Plaintiff leave to amend.  The Amended Complaint alleged five claims for relief against Select, McBride, and Carbenia: (1) Violations of 42 U.S.C. § 2000(e); (2) Violations of O.R.C. § 4112 Race Discrimination; (3) Violations of O.R.C. § 4112 Retaliation; (4) Intentional Infliction of Emotional Distress; and (5) Negligent Retention and Supervision.  On October 31, 2011, Defendants moved for summary judgment. Plaintiff opposed the motion and voluntarily dismissed the claims of Intentional Infliction of Emotional Distress and Negligent Retention and Supervision with prejudice on November 30, 2011. Defendants then replied in support of their motion for summary judgment and the matter is now ripe for review.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party opposing summary judgment must show that there are facts genuinely in dispute, and must do so by citing to the record. Fed. R. Civ. P. 56(c)(1)(a). This circuit has long held that "mere conclusions and unsupported allegations, rooted in speculation, do not meet that burden." *Bell v. Ohio State Univ.,* 351 F.3d 240, 253 (6th Cir. 2003) citing *Bryant v. Commonwealth of Kentucky,* 490 F.2d 1273, 1274 (6th Cir. 1974).

### B. Discrimination Claims

Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"), as well as Ohio Revised Code Chapter 4112. She asserts that because of her race, Defendants discriminated against her with respect to the terms, conditions, privileges of employment and other matters directly and/or indirectly related to her employment.

Plaintiff admits to having only circumstantial evidence of discrimination. Doc. 37. In the absence of direct evidence, the Court uses the burden shifting-analysis set forth in *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981). Plaintiff must first establish a prima facie case of discrimination, the burden then shifts to Defendants to establish a legitimate, non-discriminatory reason for the termination, then the burden shifts back to the Plaintiff to establish the termination was pretextual. *Id.*

Claims under the Ohio Revised Code Chapter 4112 utilize the same analysis as Title VII, so these claims will be addressed simultaneously. *See Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civ. Rights Comm'n,* 421 N.E.2d 128, 131 (Ohio 1981). In

5

order to establish a prima facie case of racial discrimination, Plaintiff must show the following: 1) that she was a member of a protected class; 2) that she was subject to an adverse employment action; 3) that she was qualified for the position; and 4) that she was treated differently than employees outside the protected class for the same or similar conduct. *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582-583 (6th Cir. 1992), (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)).

Defendants do not contest that Plaintiff satisfies the first three elements of her prima facie case. Accordingly, the Court need only examine the fourth element which requires proof that non-protected employees "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Jones v. Potter,* 488 F.3d 397, 405 (6th Cir. 2007). Plaintiff was terminated after allegedly refusing to administer breathing treatment to a patient, a terminable offense under Select's employment policy. The Plaintiff asserts that both Billie and Hewit, Caucasian RT's, are similarly situated employees that were treated differently.

Hewit resigned in lieu of termination after being caught sleeping on the job in a patient's room on May 24, 2009. To meet her burden, Plaintiff must show that Hewit engaged in the same or similar misconduct and received different treatment when the misconduct was discovered. *Jones,* 488 F.3d at 405. Hewit did not fail to administer treatment to a patient; he was sleeping on the job. While Plaintiff seeks to compare the two incidents, she has failed to convince the Court that incidents are comparable. As alleged, Plaintiff willfully refused treatment to a patient. In contrast, Plaintiff has not shown that Hewit ever failed to provide services to a patient, only that he slept during his shift. While in violation of policy, there is no evidence that Hewit's misconduct affected patient care in any manner. As such, Hewit engaged in different misconduct

6

than the Plaintiff.  Furthermore, Plaintiff and Hewit were disciplined in precisely the same manner – both were given the opportunity to resign in lieu of termination.  Plaintiff appears to argue that Hewit was allowed to engage in his misconduct for a longer period of time before his resignation.  However, the record demonstrates that Hewit was promptly disciplined after his misconduct was *verified*, the same process that was followed to discipline Plaintiff.  Accordingly, Hewit provides no support for the final element of Plaintiff's prima facie case.

Billie also does not aide Plaintiff in establishing her prima facie case.  Billie, a Caucasian, held the same position as the Plaintiff, and Plaintiff asserts Billie failed to administer breathing treatment to a patient. Similar to the accusation against Plaintiff, Susan Carbenia investigated the allegation against Billie.  Upon learning of the allegation, Carbenia spoke with Cindy Burke[4], Billie, and the patient. The patient did not recall requesting the treatment, and Carbenia therefore was unable to conclude that Billie had knowingly failed to provide treatment. Because the results of the investigation were inconclusive, Billie was not terminated.

Similarly, Kathy McBride investigated the allegation that Plaintiff failed to provide a breathing treatment. During the investigation, McBride spoke with the patient, Ms. Maple[5], and the patient's physician. The day shift RN confirmed the incident report as true, the patient's physician stated the patient was alert and would know if and when he needed breathing assistance, and the patient told McBride that the Plaintiff refused to provide him treatment because it was 6:30 a.m. and the next shift could handle his request. Because the investigation confirmed that Plaintiff had failed to give a breathing treatment, Plaintiff was terminated.

Plaintiff asserts that she was treated differently from Billie because Billie is Caucasian. The evidence shows, however, that the same procedure occurred for both investigations: an

---

[4] Burke allegedly witnessed the event.
[5] Maple was an RN on the day shift during the incident in question.

incident was reported, investigated, and a decision was made. The only difference is that the investigations led to differing conclusions. Billie's investigation was inconclusive, while the investigation of Plaintiff confirmed that Plaintiff failed to provide treatment. Accordingly, Plaintiff has failed to show that Billie engaged in similar misconduct without differentiating circumstances. Plaintiff, therefore, has failed to establish her prima facie case.

Even if the Plaintiff can establish a prima facie case, summary judgment is still appropriate. If a plaintiff establishes a prima facie case, the burden then shifts to the defendants to assert a legitimate, non-discriminatory reason for their actions. *Burdine,* 450 U.S. at 254-256. Once a defendant offers a legitimate reason, the burden then shifts back to the plaintiff to prove that the reason was a pretext for intentional race discrimination. *McDonnell Douglas,* 411 U.S. at 804-805.

Assuming, *arguendo*, that Plaintiff has established a prima facie case, the burden shifts to Defendants to offer a legitimate, non-discriminatory reason for Plaintiff's termination. Here, Defendants state that Plaintiff was terminated for failing to administer breathing treatment to a patient. Plaintiff concedes that this is a terminable offense under Select's personnel policy. Moreover, as detailed above, statements from the patient and the patient's physician offered ample evidence from which Defendants could conclude that Plaintiff engaged in the alleged misconduct. Accordingly, Defendants have met their burden for providing a legitimate reason for terminating Plaintiff. The burden now shifts to Plaintiff to establish the incident was pretext for intentional race discrimination. *McDonnell Douglas,* 411 U.S. 792 at 804.

To demonstrate pretext, a plaintiff is required to show either: "(1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the decision; or (3) that they were insufficient to motivate the employment decision." *Mitchell v. Vanderbilt*

8

*Univ.*, 389 F.3d 177, 184 (6th Cir. 2004) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). Plaintiff appears to rely upon her argument that the proffered reason for her dismissal had no basis in fact. The Court finds that she has not met her burden to demonstrate a genuine issue of fact on the issue of pretext.

Plaintiff offered no witnesses or statements at her termination hearing regarding the factual findings of the incident. It was not until after filing this lawsuit that Plaintiff produced a witness claiming the incident never occurred. Trina McNeal states she was with Plaintiff from 6 a.m.to 6:40 a.m on the morning of the alleged incident. Doc. 54. According to the incident report, the alleged failure to administer breathing treatment occurred at 6:30 a.m. According to McNeal, the patient did not request a breathing treatment and the call light to his room never went off during the time of the alleged incident. Doc. 54.

Even if taken as true, the affidavit of McNeal[6] does not show pretext for racial discrimination. The witness and the affidavit were not presented until well-after the termination hearing. There is no dispute that the Defendants had no knowledge of this witness or her statements at the time of the termination hearing. As Plaintiff's entire argument for showing pretext rests on McNeal's affidavit which contains allegations never before presented to Defendants, she has failed to establish a genuine issue of material fact on the issue of pretext.

Based upon the above, Defendants Motion for Summary Judgment regarding Plaintiff's Title VII and Ohio Revised Code Chapter 4112 claims of Racial Discrimination is GRANTED.

### C. Hostile Work Environment Claim

---

[6] While the Court will not formally pass on McNeal's credibility, the Court would note that she has since been terminated by Select and failed to bring forward her statement at or near the time of Plaintiff's termination. As such, there are significant credibility issues inherent in the affidavit.

Title VII is violated when a workplace is permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive enough to alter conditions of victim's employment and create abusive working environment. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 371 (1993). To establish a prima facie case of a racially hostile work environment, Plaintiff must show: 1) that she was a member of a protected class; 2) that she was subjected to unwelcome racial harassment; 3) that the harassment was based on race; 4) that the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and 5) that the employer is liable. *Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999).

Defendants address only the fourth and fifth elements; therefore elements one, two and three are uncontested for the purpose of summary judgment. Element four must be viewed under the totality of the circumstances using factors such as the frequency of the discriminatory conduct, its severity, whether it is physically threatening, humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee work performance. *Harris,* 510 U.S. 17 at 371.

During her temporary employment, Plaintiff was twice called "Buckwheat" by a non-supervisory employee. Doc. 37. Plaintiff concedes that she did not pursue the incident because she was a relatively new employee and an apology was issued. Plaintiff also that asserts she overheard other derogatory racial comments directed at other coworkers.  To that extent, "only harassment that was directed toward plaintiff herself or toward others who associated with or advocated on behalf of African-American employees is relevant to our analysis, and only to the extent that plaintiff was aware of it." *Barret v. Whirlpool Corp.,* 556 F.3d 502, 515-516 (6th Cir.

2009). Furthermore, a single incident[7] of the use of a sex- or race-based epithet is not enough to establish the frequency or severity of the comments as required for a Title VII violation. *Ladd v. Grand Trunk W. R.R., Inc.,* 552 F.3d 495, 501 (6th Cir. 2009).

In the instant matter, Plaintiff relies upon comments that were made years before she began working for Select, including the use of the term "nigger" by a person no longer employed by Select when Plaintiff began her employment. See Doc. 42-1 at 11. Plaintiff also contends that an aide once called Benita Burgins a "monkey" and was not disciplined. Again, the record does not make it clear when this event occurred or how or even if Plaintiff was aware of it. However, the record does make clear that only one incident ever directly involved Plaintiff. Furthermore, even crediting the other alleged incidents, they do not rise above the isolated incidents that do not give rise to liability. Accordingly, Plaintiff's hostile work environment claim fails. Defendants' motion for summary judgment on Plaintiff's Title VII claim for Hostile Work Environment is GRANTED.

### D. Retaliation Claims

Title VII of the Civil Rights Act and the Ohio Revised Code Chapter 4112 forbid retaliation by employers against employees who report workplace discrimination. Retaliation claims use the same analytical framework as Title VII and Chapter 4112 discrimination claims. *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 543 (6th Cir. 2008). Plaintiff must first establish a prima facie case of retaliation, the burden then shifts to the Defendant to establish a legitimate, non-retaliatory reason for the termination, and then the burden shifts back to Plaintiff to establish pretext. *McDonnell Douglas,* 411 U.S. 792 at 802; *Burdine*, 450 U.S. at 256. To establish a retaliation claim, Plaintiff must prove she was: 1) engaged in protected

---

[7] The Plaintiff was called "Buckwheat" twice, but because both instances occurred in the same conversation, it is considered one incident

11

activity; 2) Defendants were aware that plaintiff had engaged in that activity; 3) Defendants took an adverse employment action against Plaintiff; and 4) there is a causal connection between the protected activity and the adverse action. *Greer-Burger v. Temesi,* 116 Ohio St. 3d 324, 327 (2007) (*citing Canitia v. Yellow Freight Systems, Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990)).

There is no dispute that Plaintiff reported numerous complaints to Defendants about her co-workers, that Defendants knew Plaintiff filed these complaints, or that Plaintiff was fired. However, Defendants assert that there is no causal connection between the protected activity and the adverse action as required by the fourth element. Defendants state that Plaintiff was terminated for a legitimate, non-discriminatory reason-failing to provide a breathing treatment to a patient. Plaintiff asserts that she did not fail to administer breathing treatment to a patient, and that she was instead terminated for filing complaints against her Caucasian co-workers.

The Plaintiff has the initial burden to establish a prima facie case for retaliation. The burden, however, is light: "[all] the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the protected activity and the retaliatory action." *Upshaw v. Ford Motor Co.,* 576 F.3d 576, 588 (6th Cir. 2009). "In *Hamilton v. GE,* the Sixth Circuit found that the temporal proximity of less than three months combined with increased scrutiny of the plaintiff's work after he filed an EEOC complaint was sufficient to establish the causation element. 556 F.3d 428, 436 (6th Cir. 2009)." *Diggs v. Potter*, 2012 WL 669955, at *7 (6th Cir. Feb. 29, 2012).

Plaintiff asserts that she was retaliated against for complaining of racial discrimination. Specifically, Plaintiff claims Carbenia issued her a verbal warning on March 3, 2009 after Plaintiff challenged Carbenia's treatment of her and complained to Carbenia of other discriminatory conduct. Between May 21, 2009 and May 25, 2009, Plaintiff filed 5 incident

reports accusing multiple Caucasian co-workers of discriminatory behavior and patient quality assurance violations. Plaintiff formally repeated each complaint in writing and provided the complaints to McBride. Plaintiff alleges that instead of investigating the issues, McBride recommended her termination for allegedly failing to administer treatment to a patient. At her termination meeting, Plaintiff told the HR Coordinator that she was being treated differently because she was African-American. Pending an investigation into Plaintiff's complaints, she was suspended in lieu of termination.

After further investigation returned mixed results, Select reinstated Plaintiff on June 8, 2009. About two weeks later, on June 25, 2009, Defendants assert that Plaintiff failed to administer treatment to a patient once again. A few weeks before her second termination meeting, Plaintiff drafted a lengthy list of complaints and incidents of Caucasian coworkers being treated differently. Plaintiff sent the complaints to Shovlin on June 3, 2009. The complaints consisted of allegations of hostile work environment, compromised patient care, and employee dereliction of duty. On June 26, 2009, after an investigation confirmed that Plaintiff failed to provide breathing treatment to a patient, Defendants terminated Plaintiff. When Plaintiff told McBride that the patient lied and the incident should be investigated, McBride allegedly replied "[well] stop beating the dead horse, Karen." Pl. Dep. 101, 107. Plaintiff asserted that she observed that incident reports filed by African-American employees against Caucasian co-workers were not believed or taken seriously.  In contrast, Plaintiff alleged, that when a Caucasian employee would write up an incident report asserting wrongdoing by an African-American co-worker, McBride would take steps to ensure that the alleged infractions resulting in sanctions.

There is no dispute that Plaintiff was terminated very close in proximity to her complaints.  At the same time, there is little dispute that Plaintiff consistently complained of the conduct of her co-workers throughout her employment at Select.   Assuming *arguendo* that Plaintiff has met her prima facie case through temporal proximity, the burden shifts to Defendants.

The burden now shifts to the Defendants to establish a legitimate, non-retaliatory reason for terminating Plaintiff's employment. Defendants assert Plaintiff was terminated for failing to administer breathing treatment to a patient and have established that this failure is a terminable offense under Select's employment policy. Plaintiff must then show the reason was pretext for intentional retaliation. Plaintiff fails to establish this for the same reason that she fails to establish it under a racial discrimination analysis. At Plaintiff's termination hearing, the only evidence brought forward was the incident report. There was nothing that could have shown the termination was based on retaliatory actions by the Defendants. In fact, at the Plaintiff's first termination hearing, she was given favorable treatment when she alleged discrimination and misconduct by her co-workers. McBride's investigation of the May 25, 2009 incident determined that Plaintiff failed to administer breathing treatment to a patient. Defendants could have terminated the Plaintiff following that incident, but in light of the need to investigate to her complaints decided to give her a second chance. "Where the same actors make positive and adverse employment decisions about an individual…a court may strongly infer a nondiscriminatory motivation in the later action." *Pirsil v. Int'l Steel Group,* 2005 WL 1406296, at *3 (Ohio Ct. App. June 16, 2005).  Accordingly, Plaintiff has failed to offer evidence of pretext that would warrant denial of the pending motion for summary judgment.

Defendants' motion for summary judgment on Plaintiff's Title VII and Ohio Revised Code Chapter 4112 Retaliation claims is GRANTED.

### E. INDIVIDUAL LIABILITY

On February 17, 2011 the Court issued a Memorandum of Opinion dismissing Plaintiff's personal capacity Title VII claims against McBride, Carbenia, and Shovlin. On June 10, 2011, Plaintiff filed a Motion to Clarify, asserting the personal capacity state law claims against Defendant McBride and Defendant Carbenia arising under Ohio Revised Code Chapter 4112 remain. Plaintiff filed personal capacity state claims in an Amended Complaint contemporaneously with the Motion to Clarify. The Court declined to provide an advisory opinion as to the legitimacy of Plaintiff's claims.

Plaintiff asserts that Defendant Carbenia and Defendant McBride both individually liable for their individual acts of discrimination. Under Ohio law, the definition of "employer" differs from Title VII.[8] Defendant McBride and Defendant Carbenia both supervised more than four employees, and fall under the definition of "employer" as it relates to Ohio Revised Code Chapter 4112. However, for reasons discussed above, there is no evidence of discrimination, retaliation or a hostile work environment. There first must be discriminatory actions *found* in the workplace to "[hold] supervisors and managers individually liable for their discriminatory actions" *Genero,* 84 Ohio. St. 3d 293, 297. Accordingly, summary judgment is Granted in favor of Defendants on Plaintiff's personal capacity state law claims against Defendant McBride and Defendant Carbenia.

---

[8] Under Title VII, "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees and any agent of such a person." R.C. 4112.01(A)(2) defines "employer" as "any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of the employer." *Genero v. Cent. Transp. Inc.*, 84 Ohio St. 3d 293, 301 (1999).

### F. CONCLUSION

For the reasons set forth herein, the Defendants' Motion for Summary Judgment GRANTED. The complaint is hereby dismissed.

IT IS SO ORDERED.


Dated:  August 6, 2012                              */s/ John R. Adams*_____
                                                    JUDGE JOHN R. ADAMS
                                                    UNITED STATES DISTRICT JUDGE